**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JASON D. ALSTON**                                                                    **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 4:16-CV-236-DMB-JMV**

**MISSISSIPPI DEPARTMENT OF TRANSPORTATION**                          **DEFENDANT**

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**

     This matter is before the court for a report and recommendation on the Defendant's motion to dismiss [41], filed on March 31, 2017.  The Plaintiff filed a response in opposition [42] on April 3, 2017, a second response in opposition [43] on April 6, 2017, and a third response in opposition [47] on April 17, 2017.

     For the reasons stated herein, the court recommends that the motion be granted in part and denied in part. The court recommends that the only viable claim is Plaintiff's claim that he was suspended for 40 hours in retaliation for filing his initial EEOC charge. As for the other claims, the court recommends that they be dismissed for failure to state a claim under FED.R.CIV.P. 12(b)(6). However, it is recommended that Plaintiff, due to his *pro se* status, be given an opportunity to file a motion to amend his complaint with a proposed second amended complaint attached that addresses the shortcomings of his amended complaint [21] identified herein. To the extent such a motion is filed and granted, any claims recommended for dismissal here but restated as viable claims in the proposed amended complaint, shall survive as revised.

**Background**

**I.     The Amended Complaint**

     By way of amended complaint, the *pro se* Plaintiff alleges he was: 1) harassed/exposed to a hostile work environment due to his race resulting, ultimately, in constructive discharge (the

1

racial harassment/hostile environment claim); 2) discriminated against in job selection due to his race (the failure to promote claim); 3) discriminated against in violation of the Americans with Disabilities Act (ADA) (the disability claim); and 4) retaliated against under Title VII and the Americans with Disabilities Act (ADA) for complaining to the EEOC on June 10, 2015, about racial and disability discrimination, resulting ultimately in his constructive discharge (the retaliation claim).

Plaintiff cites the following circumstances in support of his respective claims:

**A) The racial harassment/hostile work environment claim resulting in constructive discharge:**

1) On January 8, 2015, he was ordered by a white supervisor to siphon gas out of a diesel vehicle into which he had improperly placed the gas, resulting in burns to his mouth;

2) On an unspecified date in 2015, a venomous snake was placed on his work truck by a coworker of an unknown race after the co-worker was made aware that he was terrified of snakes. His white supervisor responded and ordered the snake removed. The offending employee was transferred.

3) On June 10, 2015, he was written up for misplacement of road signs;

4) On September 19, 2015, he and a white employee were instructed to set up work signs. He was written up for misplacement of the road signs and ultimately suspended on account thereof without pay for 40 hours. The white employee was not written up nor suspended.

5) He was admitted to the hospital for three (3) days in July 2015 with a diagnosis of psychosis.

**B) The failure to promote claim:**

1) On an unspecified date in 2015, Plaintiff alleges he applied for, but was not selected for, the position of maintenance supervisor II and that the positon was filled by a Caucasian.

**C) The retaliation claim ultimately resulting in suspension without pay and constructive discharge:**

1) On September 19, 2015, Plaintiff was written up a second time for misplacement of road signs and ultimately suspended on account thereof without pay for 40 hours. His white co-worker was not reprimanded or suspended.

**D) The disability discrimination claim:**

1) On or about May 4, 2015, Plaintiff informed his supervisor he had chlamydia and this information became known to other employees. The employees are alleged to have been concerned about their safety as a result, and consequently, the supervisor required and received a doctor's release from Plaintiff prior to returning him to work after his one (1) day treatment for the condition. Plaintiff makes clear in his amended complaint that he does not have HIV. He also alleges that his supervisor commented, "he did not know anything about HIV."

Aside from the aforementioned, the amended complaint contains no other specific factual allegations, relying instead on general assertions that the working environment was "racially charged;" a black co-worker said," he hated to come to work somedays;" he made repeated, but unspecified, complaints to no avail; and his supervisors engaged in unspecified "constructive discharge tactics."

**II.     The EEOC charges**

**A) EEOC charge dated June 10, 2015**

Plaintiff alleged discrimination based on race and disability. Plaintiff alleged that the discrimination was a continuing action, and the dates that it took place were September 1, 2014-June 9, 2015. The particulars that Plaintiff included were as follows:

> I was hired September 2012 as a Technician II. On or about August 1, 2014, I requested a transfer to the Kosciusko office. Since my transfer to this office, I have been subjected to harassment from my white co-workers. I have reported several incidents of harassment to my supervisor, Morgan Henry, White. After his non-response to my complaints I filed an internal grievance against my supervisor. Approximately two or three weeks later, I informed my supervisor Morgan Henry (White) that I needed to go to the doctor to take a test, which I identified the test that I needed to take. Upon my return to work, everyone at work knew about my medical examination. After my return, my supervisor requested that I take another test because he said the employees felt uncomfortable and I needed to present a doctor's excuse in writing that I was ok. I returned to my doctor and obtained the necessary documentation requested by my supervisor. My supervisor, Morgan Henry (White) faxed a copy of the doctor's certification to the MDOT District II office in Batesville, Mississippi. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended because of my Race, Black in that I am being subjected to a hostile work environment, and the American with Disabilities Act of 1990 in that I was regarded as having a disability.

**B)  EEOC Charge dated July 13, 2015**

Plaintiff alleged retaliation, and alleged that the date the retaliation occurred was June 19, 2015. The particulars that Plaintiff included were as follows:

> I was hired September 2012 as a Maintenance Technician II. I filed an EEOC charge of discrimination in June 10, 2015. Since the filing of this EEOC Charge I have been consistently written-up for violations that were not my fault. I received a write-up on June 19, 2015, for improper placement of Road signs. I was trained by Mike Deason on how to place the signs. My supervisor, Morgan Price, came by and said I had been trained improperly. Morgan Henry, Supervisor I came by and said I had my signs wrong. At this point I was confused and I received two verbal warnings and a written warning. I believe I have been discriminated against in retaliation for filing a previous charge of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

## III.    Standard of review

When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.

*Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Such factual allegations must be enough to "raise a right of relief above the speculative level." *Id.* "The complaint must contain something more than a statement of facts that merely creates the suspicion of a legally cognizable right of action." *Davis v. Ashley Furniture Industries, Inc*., 2009 WL 605741, at *2 (N.D. Miss. Mar. 9, 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In order to survive a motion to dismiss in employment discrimination cases, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. Analysis of the Motion to Dismiss

### A) Plaintiff's Failure to Promote, Disability, and Retaliation Claims

#### 1) No adverse employment action

Defendant argues, first, that Plaintiff's failure to promote, disability discrimination, and retaliation claims each fail to state a claim because no facts are asserted from which the court might reasonably infer that an adverse employment action cognizable under law resulted therefrom. An adverse employment action is, indeed, a prerequisite to the aforementioned claims of the Plaintiff. *See, Tillman v. Southern Wood Preserving of Hattiesburg, Inc.*, 250 Fed. App'x 622, 624 (5th Cir. 2007) (recognizing that in order to establish a prima facie case of a failure to promote, plaintiff must show that he suffered an adverse employment action); *Stringer v. Mound Bayou Pub. Sch. Dist.,* 2016 WL 183701 at *8 (N.D. Miss. Jan. 14, 2016) (recognizing that in order to demonstrate discrimination on the basis of a disability, plaintiff must show he was subject to an adverse employment decision on account of his disability); and *Tabatchnick v. Contl. Airlines*, 262 Fed. App'x 674, 676 (5th Cir. 2008) (recognizing that in order to state a claim for retaliation, an adverse employment action must be present).

5

The court finds that no cognizable adverse employment action is alleged to have arisen in connection with Plaintiff's disability claim and no facts are alleged from which such action might be inferred. According to Plaintiff's amended complaint, Plaintiff was put back to work following requested time off (1 day) for treatment of the condition of chlamydia without restriction.

On the other hand, the court finds the Plaintiff does allege an adverse employment action in support of his failure to promote claim, namely, the failure to promote him to Supervisor II in 2015. However, absent an assertion that Plaintiff was qualified for the positon applied for, no adequate claim for failure to promote is alleged. *See, Ellison v. Darden Restaurants*, 52 F. Supp. 2d 747, 754 (S.D. Miss. 1999) ("In order to state a *prima facie* case of failure to promote, plaintiff must establish the following: (1) that he is a member of a protected class; (2) that he sought and was qualified for an available employment position; (3) that he was rejected for that position; and (4) that defendant continued to seek applicants with plaintiff's qualifications." (citing *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir. 1996)).

As concerns his retaliation claim, the court agrees that mere reprimands do not constitute adverse employment actions under Title VII in the Fifth Circuit. *See, Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (holding that disciplinary actions in the form of reprimands[ ] do not constitute ultimate employment decision) (citing *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002)). However, in this case, the allegation is not only that Plaintiff was reprimanded in retaliation for making an EEOC charge, but Plaintiff claims he suffered a one-week suspension without pay. A suspension without pay is often times an adverse employment action. *See Cont'l Airlines, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 638 F. App'x 283, 288 (5th Cir. 2016) ("Suspension without pay is a way to

6

dissuade employees from engaging in protected conduct, and thus, Continental's suspension of [plaintiff] for two weeks without pay was an adverse employment action.").

Plaintiff also claims constructive discharge as a result of retaliation. "A constructive discharge is functionally the same as an actual termination." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004). "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Chandler v. La Quinta Inns, Inc.*, 264 F. App'x 422, 425 (5th Cir. 2008). The inquiry does not focus on whether the employee "felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled." *Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp. 2d 570, 596 (N.D. Miss. 2011).

According to the Fifth Circuit Court of Appeals,

An employee who resigns may demonstrate constructive discharge by two means. First, she can "offer evidence that the employer made her working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans Steamship Assoc.,* 10 F.3d 292, 297 (5th Cir. 1994). Second, an employee can prove constructive discharge with evidence that she was given an ultimatum requiring her to choose between resignation and termination. *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir. 1997).

*Ross v. Greenwood Utilities*, 2014 WL 4197640, at *5 (N.D. Miss. Aug. 22, 2014). Insofar as Plaintiff claims constructive discharge as a result of retaliation, Plaintiff fails to allege facts from which the court might infer his working conditions were so intolerable that he felt compelled to resign and no ultimatum is alleged.

To state a claim for constructive discharge, the Fifth Circuit considers aggravating factors, including: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's

resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 607–08 (5th Cir. 2012). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Dediol v. Best Chevrolet, Inc.,* 655 F.3d 435, 444 (5th Cir. 2011).

In the instant case all that the employer is alleged to have done over what amounts to a 10-month period was twice reprimand the employee for misplacement of highway signs (the last time resulting in a 40 hour suspension without pay); require him, 9 months before the alleged constructive discharge, to siphon gas from a diesel tank where it was improperly placed by the plaintiff; not promote him when he applied for another position on an unspecified date, and require, approximately five (5) months prior to his alleged constructive discharge, to have a doctor's release to return to work after reporting to his employer that he was being treated for chlamydia, a condition which Plaintiff alleges was disclosed by an unnamed person(s) to his co-workers.

The court cannot plausibly infer from these allegations, assuming them true, that the conditions of Plaintiff's employment were intolerable when he resigned from employment in October 2015. Accordingly, Plaintiff has failed to state a claim for constructive discharge as a result of retaliation. *See Yates v. Johanns*, 2007 WL 844694, at *4 (N.D. Miss. Mar. 19, 2007) (plaintiff failed to state a claim for constructive discharge when she was transferred to a less desirable position that forced her to face her genuine fear of working with animal and human pathogens); *McGarry v. Univ. of Mississippi Med. Ctr.*, 2008 WL 3822447, at *8 (S.D. Miss. Aug. 12, 2008), *aff'd*, 355 F. App'x 853 (5th Cir. 2009) (plaintiff failed to state a claim for constructive discharge when employer failed to give her the transfer she desired); *Jett v. Dallas*

*Indep. Sch. Dist.,* 798 F.2d 748, 755 (5th Cir. 1986) (determining that humiliation and embarrassment plaintiff suffered in being transferred from his position as athletic director/head football coach to a history teacher/freshman football and track coach was insufficient for constructive termination claim); *see also Haley v. Alliance Compressor LLC,* 391 F.3d 644, 652 (5th Cir. 2004) (concluding that embarrassment plaintiff felt regarding a sarcastic comment made by a coworker concerning management's failure to inform her about a late-notice meeting was not the type of badgering or harassment designed to encourage an employee's resignation).

### 2) Failure to Exhaust

By way of alternative argument, Defendant asserts Plaintiff's claims, to the extent they rely for evidence of an adverse employment action on an alleged failure to promote, constructive discharge and/or the 40 hour suspension without pay, must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), because none of these alleged adverse actions were complained of by the Plaintiff in either of the two EEOC charges he filed. Defendant asserts, "If the plaintiff asserts claims that she failed to allege properly in her EEOC charge, the complaint should be dismissed under Rule 12(b)(1). *Jackson v. Parker Hannifin Corp.*, 2011 WL 1237627, at *2 (N.D. Miss. Feb. 28, 2011) (citing *McClain v. Lufkin Industres, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008))."

Were this a complete statement of the applicable law, the court would agree with the Defendants' conclusion, but in the Fifth Circuit:

> this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination. *Sanchez,* 431 F.2d at 466. We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label. *Fellows,* 701 F.2d at 451; *Fine v. GAF Chemical Corp.,* 995 F.2d 576, 578 (5th Cir. 1993); *Ong,* 642 F.2d at 319.

9

*Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Thus, the premise of Defendant's argument is flawed. The Defendant has not argued that under the actual, broader standard set forth above, the Plaintiff's claims were not exhausted. Accordingly, the court will not undertake on its own to do so here.[1]

### 3) Beyond the 180-day filing deadline

Defendant argues that any claim by Plaintiff for constructive discharge, failure to promote or suspension without pay are now beyond the 180-day period for filing a charge with the EEOC following the occurrence of such alleged events. However this argument assumes the claims were not already exhausted. As is explained above, because Defendant asserts an incomplete and therefore inaccurate standard for determination of exhaustion, its argument and assessment based thereon are without merit. Accordingly, exhaustion has not been ruled out.

### 4) No disabling condition or perceived disabling condition alleged.

Defendant contends the Plaintiff does not assert that he has a disability, or, for that matter, that his employer perceived him as having a disability—much less a disabling condition or perceived disabling condition affecting a major life activity. *See Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (In order to determine whether employee has a disability within meaning of the ADA, courts must determine: (1) whether employee has an impairment; (2) whether the activity on which employee relies is a major life activity; and, if so, (3) whether employee's impairment substantially limits that major life activity.) The court agrees. To be sure, Plaintiff alleges he informed his employer he had chlamydia, and his employer required a

---

[1] If the court were to do so, it is of note, for example, that the EEOC advised Defendant that Plaintiff had further complained to them about the September 2015 reprimand that ultimately resulted in the unpaid suspension (*see* letter of the EEOC dated October 2, 2015). On the other hand, certainly at first blush, it is hard to fathom how it might be reasonably inferred that a failure to promote investigation likely grew out of either of Plaintiff's EEOC charges.

medical release to work following its treatment but nothing is alleged to suggest such a condition, or any other condition, is a disabling one or that his employer perceived it as such. To the contrary, Plaintiff was put back to work without restriction following being off a day to be treated.

### B)  Plaintiff's Hostile Work Environment/Harassment Claim

Defendant contends Plaintiff does not allege mistreatment due to his race. *See* Memorandum in Support [41-1] at pp. 7-8. This is not entirely true, as the complaint, including exhibits, does allege that the harassment complained of was, at least in part, on account of Plaintiff's race. *See*, for example, EEOC charge dated June 10, 2015 [21-1] at 6; Amended complaint [21] at 3-7. Nevertheless, aside from alleging (in conclusory fashion) racial harassment, the complaint contains only the barest of factual allegations in support of the claim. Specifically, Plaintiff asserts: that the environment was "racially charged;" that a white employee guilty of a similar offense as he (i.e. misplacement of signs) was not disciplined; Plaintiff was passed over for a job filled by a white man; a white supervisor ordered him to siphon gas out of a diesel vehicle into which he had improperly placed the gasoline; and a co-worker of unspecified race placed a venomous snake on this work truck.

The court finds that these bare facts are not sufficient to state a claim for hostile environment/racial harassment. A hostile environment harassment claim requires the pleading of some facts from which the court can plausibly infer the following: "(1) membership in a protected group; (2) harassment; (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v.*

11

*Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Behavior in the workplace that could be labeled as "harassment" will not fall within the purview of Title VII if "(1) it fails to affect a term, condition, or privilege of employment or (2) it is not based on a prohibited discriminatory animus." *See Trujillo v. University of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)). "The complained of conduct must have ... a racial character or purpose to support a Title VII claim" based on race. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). A "conclusory allegation, standing alone, is insufficient to state a plausible claim for a hostile work environment under Rule 12(b)(6)." *Walker v. Tronox LLC*, 2012 WL 1431422, at *3 (N.D. Miss. Apr. 25, 2012).

In the instant case, aside from noting that in some instances complained about, the offending party was Caucasian, the complaint fails to allege facts from which it might be inferred that the conduct complained of was on account of Plaintiff's race. Such is the case regarding the June 2015 reprimand for improper placement of signs, orders to remove improperly placed gasoline by siphoning, suspension without pay following repeated sign misplacement, and the placement on Plaintiff's work truck of a venomous snake by a co-worker. Indeed, at one point in his complaint, Plaintiff appears to contend that his alleged mistreatment by co-workers was due to jealously over his personal vehicle. *See*, Amended Complaint [21] at ¶ 21 ("MDOT employee Donald Jamison told plaintiff he believes the MDOT (White) Employees that is [sic] racially harassing plaintiff is [sic] jealous of both Alston's Customize truck with Customize rims.").

## Conclusion

In summary, the court finds that the amended complaint fails to allege sufficient facts to support a failure to promote, disability discrimination claim or hostile environment/harassment claim on the basis of race. Moreover, irrespective of whether aligned with his harassment and/or retaliation claims, no facts are alleged from which it might plausibly be inferred that that Plaintiff was constructively discharged. The undersigned recommends that said claims be dismissed without prejudice and that the only claim allowed to proceed be Plaintiff's claim that he was suspended for 40 hours in retaliation for filing his initial EEOC charge.

Despite these findings by the court, because of Plaintiff's *pro se* status, the court recommends that he be permitted an opportunity, by way of motion to amend his complaint, with a proposed second amended complaint attached, to assert sufficient facts to support his contention that he suffered disability discrimination and/or harassment culminating in constructive discharge because of his race; and/or that he was qualified for the position of supervisor II, applied for and was denied the job in favor of a Caucasian. Should the *pro se* Plaintiff desire to amend his complaint to address the shortcomings of his amended complaint as identified herein, the undersigned recommends that he be ordered to do so by filing a motion to amend with a proposed second amended complaint attached, on or before fourteen (14) days from the date of the order adopting this report and recommendations as the opinion of the court, if any.

Once a decision is rendered on such motion to amend, if any, the undersigned recommends that the Defendant be allowed to proceed with any further motion it may elect to file to address exhaustion under the applicable legal principle.

### Procedure for Filing Objections

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this, the 26th day of June, 2017.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**