IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JASON D. ALSTON**                                                                                                           **PLAINTIFF**

**V.**                                                                                                    **NO. 4:16-CV-236-DMB-JMV**

**MISSISSIPPI DEPARTMENT OF
TRANSPORTATION**                                                                                                             **DEFENDANT**

## ORDER

This case of alleged employment discrimination is before the Court on numerous motions, most of them filed by pro se plaintiff Jason D. Alston.

## I
### Relevant Procedural History

On August 24, 2017, Jason D. Alston, proceeding pro se, filed a third amended complaint against the Mississippi Department of Transportation ("MDOT"). Doc. #70. Although the facts section of the third amended complaint contains allegations of racial discrimination related to a failure to promote, and allegations of unlawful retaliation related to a write-up and subsequent forty-hour suspension, *see id*. at 2–4, the pleading asserts only a claim of retaliation in violation of Title VII of the Civil Rights Act, *id*. at 5–6.

MDOT moved to dismiss the third amended complaint on November 10, 2017. Doc. #82. On January 2, 2018, United States Magistrate Judge Jane M. Virden issued a Report and Recommendation recommending that the motion be granted to the extent Alston asserted a retaliation claim based on failure to promote, and that the motion be denied with respect to Alston's claims premised on "September reprimand(s)/40-hour suspension." Doc. #93. This Court adopted the Report and Recommendation on April 17, 2018. Doc. #99.

After a period of discovery: (1) MDOT moved for summary judgment, Doc. #140; (2)

Alston moved for summary judgment, Doc. #142; (3) Alston filed "Plaintiff's Second Motion to take Judicial Notice," Doc. #150; (4) Alston moved for leave to file a sur-reply in opposition to MDOT's motion for summary judgment, Doc. #151; (5) Alston filed "Plaintiff's Motion to Take Judicial Notice in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment," Doc. #156; (6) Alston moved for Rule 11 sanctions against MDOT, Doc. #163; and (7) Alston moved to supplement his motion for sanctions, Doc. #169.

## II
## Alston's Motion to Supplement

Alston's motion to supplement seeks leave to "attach" an Exhibit A to his motion for sanctions filed January 22, 2019, and to attach an Exhibit B to the accompanying memorandum filed the same day. Doc. #169 at 2. The proposed attachments are signature pages dated January 17, 2019. Docs. #169-1, #169-2. The Court presumes these signature pages are intended to replace the apparently erroneous signature pages dated December 21, 2018, in Alston's January 22 motion for sanctions and supporting memorandum. *See* Doc. #163 at 3; Doc. #164 at 9.

MDOT opposes Alston's motion to supplement because it already responded to the motion for sanctions and because "Plaintiff's Motion for Leave is Plaintiff's fifth motion asserting that Defendant has engaged in misconduct …." Doc. #170. While both assertions may be true, neither justifies denying the limited and non-substantive relief Alston's motion seeks. Accordingly, Alston's motion to supplement his motion for sanctions will be granted.

## III
## Alston's Motions for Judicial Notice

In "Plaintiff's Second Motion to take Judicial Notice," Alston asks the Court to take judicial notice of statements made by MDOT or its counsel (1) during his deposition, (2) in MDOT's memorandum supporting its motion for summary judgment, (3) in MDOT's reply in

2

support of its motion for summary judgment, and (4) in MDOT's response to his motion for summary judgment. Doc. #150. Alston argues these statements show MDOT's counsel has acted in "total disregard for the Federal Rules of Civil Proc[e]dures 11." *Id*. at 4. MDOT opposes the motion because "there is no credible evidence to demonstrate that the Defendant has acted in bad faith …." Doc. #155 at 2.

MDOT's response seems to confuse the relief requested in the motion (taking judicial notice of certain statements) with the alleged purpose of the request (to support a motion for sanctions). While the motion for sanctions may ultimately be denied, that does not mean the Court may not take judicial notice of the statements Alston seeks to sanction. Regardless, a court does not need to take judicial notice of exhibits which already appear on the Court's docket. *Fenton v. Wells Fargo Home Mortg.*, No. 17-cv-113, 2017 WL 1346672, at *2 (S.D. Cal. Apr. 12, 2017) (collecting cases). Because the deposition and memorandums Alston asks the Court to take judicial notice of are already on this Court's docket, there is no reason to take judicial notice of such documents. Therefore, "Plaintiff's Second Motion to Take Judicial Notice" will be denied as moot. For the same reason, the Court also will deny as moot "Plaintiff's Motion to Take Judicial Notice in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment," which asks the Court to take judicial notice of Alston's deposition and MDOT's memorandum in support of its motion for summary judgment. Doc. #156.

## IV
## Alston's Motion for Sanctions

Alston, invoking Federal Rule of Civil Procedure 11 and this Court's inherent power to sanction, seeks $100,000 in attorney's fees because MDOT's memorandum in support of its motion for summary judgment states the elements of an Americans with Disabilities Act retaliation claim rather than a Title VII retaliation claim. *See* Doc. #164. MDOT argues sanctions are

unwarranted because it correctly stated Title VII law in its reply and in other filings.[1]  Doc. #166 at 2.  MDOT's response also purports to "correct[] its Memorandum" to apply the proper standard. *Id*.

Because Title VII and ADA retaliation claims are resolved under the same standard,[2] because the relevant pleading made clear it was seeking dismissal of a Title VII claim, and because MDOT indisputably referred to the correct standard in other briefs, Alston essentially seeks $100,000 for an inconsequential typographical error.  Neither Rule 11, which does not apply when errors are timely corrected,[3] nor this Court's inherent authority to sanction, which only applies in instances of bad faith,[4] contemplate sanctions for such an action.  *See Gray v. Staley*, 310 F.R.D. 32, 40 (D.D.C. 2015) (Rule 11 sanctions denied where counsel subsequently corrected misstatement on the record); *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 385 (E.D. La. 2011) (negligence insufficient to support inherent power sanctions).  Alston's motion for sanctions will be denied.[5]

---

[1] Alston contends that because he mailed the motion to MDOT on January 17, 2019, MDOT's February 5, 2019, response was untimely. Doc. #168. Local Rule 7(b)(4) provides that a party must file a response within 14 days of service. The Federal Rules of Civil Procedure provide that a document is served when it is mailed to a person's last known address, Fed. R. Civ. P. 5(b)(2)(C), but that when service is completed by mail, three days are added to the applicable deadline, Fed. R. Civ. P. 6(d). Alston is correct that, if the motion was mailed on January 17, 2019, the deadline for response would have been February 4, 2019, one day before MDOT responded. However, insofar as this Court did not receive Alston's motion until January 22, 2019, the Court is skeptical of Alston's representation. Given this uncertainty, and because the response was filed only one day after the deadline, the Court will exercise its discretion to consider MDOT's response. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006) (decision to consider untimely response reviewed for abuse of discretion).

[2] *See Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008) ("[T]his court applies the same analysis to ADA and Title VII retaliation claims.").

[3] *See* Fed. R. Civ. P. 11, advisory committee note to 1993 amendment (motion for sanctions should not be filed when "alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention").

[4] *In re Yorkshire*, 540 F.3d 328, 332 (5th Cir. 2008) (inherent authority to sanction requires specific finding of bad faith).

[5] Alston, in his reply in support of the motion for sanctions, argues that MDOT's duplicate filing of its reply in support of its motion for summary judgment is indicative of an intent to "harass the plaintiff and drive and/or increase the cost of litigation to delay this matter." Doc. #168 at 4. A review of the record shows that MDOT filed a reply on December 26, 2018, Doc. #146, and then the next day filed an amended reply, Doc. #147, and an accompanying memorandum (which appears identical to the initial reply), Doc. #148. Although less than clear, it appears MDOT was under the mistaken impression a rebuttal must be accompanied by a memorandum brief. *See* L.U. Civ. R. 7(b)(2) ("The memorandum brief must be filed as a separate docket item from the *motion or response* and the exhibits."); *see also*

# V
# Alston's Motion for Sur-reply

"Plaintiff's Motion for Leave to File Surreply to Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" seeks leave to file a sur-reply (which is included in the motion) to "correct a misstatement made by the Defendant in Defendant's Reply"[6] and "a different legal authority cited for the first time." Doc. #151 at 2. MDOT did not respond to the motion. The motion for leave will be granted as unopposed. *See* L.U. Civ. R. 7(b)(3)(E) (non-dispositive motions may be granted as unopposed).

# VI
# Motions for Summary Judgment

Both MDOT and Alston filed motions for summary judgment on the sole claim in this action—Alston's Title VII retaliation claim premised on discipline related to a wrongful forty-hour suspension without pay.[7] Doc. #140; Doc. #142.

### A. Summary Judgment Standard

"Where, as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010).

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper

---

L.U. Civ. R 7(b)(4). While these filings are indicative of a lack of attention to the rules of the Court, they are not sanctionable conduct or evidence of any improper purpose.

[6] Although the specific misstatement is not identified in the motion, Alston's proposed sur-reply represents that, in characterizing his response, MDOT "cite[d] a different legal authority from what was said …." Doc. #151 at PageID #1563.

[7] Despite the characterization of the claim in the Report and Recommendation, it does not appear Alston is asserting an independent claim premised on the write-up connected to the forty-hour suspension. To the extent he is, the claim would fail for the reasons below.

5

only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (quotation marks omitted). In evaluating summary judgment issues, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

### B. Factual Background

Jason Alston was hired by the Mississippi Department of Transportation on September 1, 2012, to work as a Maintenance Technician I in District 5 in Pearl, Mississippi. Doc. #140-5 at 12, 20, 22. Alston was promoted to the position of Maintenance Technician II sometime later. *Id.*

at 20. In this role, Alston was responsible for flagging traffic, removing litter and debris, and general upkeep of the highways and roads in his assigned area. *Id*. at 20–21. "Around 2014," Alston was transferred from District 5 to District 2 in Kosciusko, Mississippi. *Id*. at 22, 28.

On March 5, 2015, Alston filed an internal grievance against Morgan Henry, his supervisor, and Keith Mangrum, another MDOT employee. Doc. #143 at 5.[8] The nature of this grievance is unclear but the issue was resolved.[9] *Id*.

On June 2, 2015, MDOT Supervisor Martin Price issued Alston a written reprimand for improperly placing "Mowers Ahead" signs. Doc. #143 at 8. Price then drew Alston a diagram showing the proper placement of signs. *Id*. Six days later, Alston placed the signs as shown but again was given a reprimand. *Id*. Price did not issue a reprimand to Mangrum, who had also placed signs that day. *Id*.

On June 10, 2015, Alston filed a charge of discrimination with the Equal Employment Opportunity Commission asserting race and disability discrimination. Doc. # 140-2. The charge alleged that after his transfer to Kosciusko, Alston had been harassed by his white co-workers and Henry had failed to respond properly, and that after a medical examination, Henry required Alston to obtain a "doctor's excuse in writing." *Id*.

On June 18, 2015, Alston and MDOT employee Ronnie Bain placed "Mowers Ahead" signs on various roads, apparently in an improper fashion. Doc. #143 at 8. Alston was issued a

---

[8] Alston submitted two affidavits—one averring that "[e]verything stated in the Plaintiff's Motion for Summary Judgment is … true," Doc. #143-4; and one averring that the statement of material facts in his response to MDOT's motion for summary judgment "is true," Doc. #145-4. In evaluating the factual record, the Court has considered the factual statements supported by Alston's affidavits. *See generally Campbell v. Pohlman*, No. 09-cv-1041, 2011 WL 1755714, at *5 (D. Colo. Apr. 14, 2011) (declining to consider facts in response where plaintiff "did not swear to the accuracy of facts stated in the Response under penalty of perjury so that the Response could be treated by the Court as an affidavit").

[9] Alston filed two additional written complaints against Mangrum. Doc. #143 at 5. Mangrum was transferred after placing a venomous snake in the back of Alston's assigned work truck. *Id*.

written reprimand but Bain was not. *Id*. Approximately a month later, on July 13, 2015, Alston filed another charge of discrimination. Doc. #140-3. This second charge alleged that after filing his June 10, 2015, charge, Alston had "been consistently written-up for violations that were not [his] fault." *Id*. The charge referenced "two verbal warnings and a written warning" from a June 19, 2015, write-up. *Id.*

On September 11, 2015, Alston was issued a Pre-Disciplinary Action Notice for placing road signs on Highway 43 North when he had been twice instructed to place the signs on Highway 43 South. Doc. #140-6. On September 25, 2015, Alston was suspended for forty hours without pay based on a finding that he committed:

> [A] Group Two offense of Insubordination, including, but not limited to, resisting management directives through actions and/or verbal exchange, and/or failure or refusal to follow supervisor's instruction, perform assigned work, or otherwise comply with applicable established written policy as stipulated in the Mississippi State Employee Handbook, Chapter 7 (§7.1).

*Id*. Jan Bidonne, who was with Alston on that day, apparently was not suspended. *See* Doc. #140-8.

### C. Analysis

Title VII prohibits an employer from discriminating against an employee because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In the absence of direct evidence of retaliatory intent, Title VII retaliation claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016). Under this approach, a plaintiff must first establish a prima facie case of retaliation. *Id*. Once this is done, the burden shifts to the defendant to show a legitimate non-retaliatory reason for the challenged actions. *Id*. Should the defendant satisfy this burden, the

burden shifts back to the plaintiff "to show that [the] reasons are pretext for retaliation." *Id*.

### 1. *Prima Facie Case*

To establish a prima facie case for retaliation under Title VII, a plaintiff must show that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019). There is no dispute that Alston participated in protected activity when he filed his July 13, 2015, EEOC charge or that the temporal proximity between this activity and his September 25, 2015, suspension is sufficient to satisfy the third element's causal requirement. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been sufficient to satisfy the causal connection for summary judgment purposes."). The only question is whether the forty-hour suspension without pay represents an adverse action.

"For an employer's act to qualify as a materially adverse action, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017). Courts have regularly held, and this Court agrees, that suspensions without pay satisfy the material adversity standard.[10] *See Morales v. N.Y.S. Dep't of Labor*, 865 F. Supp. 2d 220, 244 (N.D.N.Y. 2012) ("There is no question that plaintiff's one-week suspension without pay qualifies as an adverse employment."); *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 989 (N.D. Ill. 2014) ("Suspension without pay is a materially adverse employment action."). Accordingly,

---

[10] In its motion, MDOT relies heavily on *Cabral v. Brennan*, a case in which the Fifth Circuit held a two-day suspension without pay was not materially adverse where the plaintiff introduced no evidence of actual harm *and* where the plaintiff "was reimbursed for any lost pay." 853 F.3d 763, 765, 767 (5th Cir. 2017). *Cabral*, of course, has no relevance here because there is no indication Alston was reimbursed for the time he was suspended.

Alston has established his prima facie case.

### 2. *Legitimate Nonretaliatory Reason*

MDOT argues "Plaintiff's suspension was in response to Plaintiff's consecutive failures to follow his supervisor's instructions and perform assigned work as directed often resulting in safety concerns for follow coworkers." Doc. #141 at 7. It is axiomatic that workplace misconduct is a legitimate nonretaliatory reason for discipline. *McCoy v. City of Shreveport*, 492 F.3d 551, 560–61 (5th Cir. 2007). Accordingly, the Court concludes that MDOT has satisfied its second-step burden.

### 3. *Pretext*

"In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse employment action would not have occurred but for the employee's decision to engage in an activity protected by Title VII." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). Alston has offered absolutely no evidence or argument tending to show he was not suspended for MDOT's proffered reason—insubordination.[11] His claim thus fails. Accordingly, MDOT's motion for summary judgment will be granted, and Alston's motion for summary judgment will be denied.

### VII
### Conclusion

As indicated above: (1) Alston's motion to supplement his motion for sanctions [169] is **GRANTED**; (2) "Plaintiff's Second Motion to take Judicial Notice" [150] is **DENIED as moot**; (3) "Plaintiff's Motion to take Judicial Notice in Support of Plaintiff's Response in Opposition to

---

[11] In the absence of any evidence that Bidonne, the employee riding with Alston, heard the relevant instructions regarding placement of signs, the fact that MDOT did not discipline Bidonne does not raise an issue of fact as to pretext.

10

Defendant's Motion for Summary Judgment" [156] is **DENIED as moot**; (4) Alston's motion for sanctions [163] is **DENIED**; (5) Alston's motion for leave to file a sur-reply [151] is **GRANTED**; (6) MDOT's motion for summary judgment [140] is **GRANTED**; and (7) Alston's motion for summary judgment [142] is **DENIED**. A final judgment will issue separately.

  **SO ORDERED**, this 30th day of July, 2019.

                **/s/Debra M. Brown**
                **UNITED STATES DISTRICT JUDGE**